In the Matter of the Estate of SAMUEL URIS, Deceased.

Surrogate's Court, New York County, June 29, 1946.

*Myron Kommel* for Florence Jurist, plaintiff.

*William Lambert* for Anna Levander, defendant.

*Walter C. Elliott* and *George M. Clarke* for Harry Granitz, defendant.

*Sydney Basil Levy* and *Chauncey H. Levy* for Anna Uris, individually and as executrix, defendant.

DELEHANTY, S. The complaint in the action transferred for trial in this court by the Supreme Court sets up four separate causes of action. The first alleged that plaintiff was the owner of $65,000 in cash or in the alternative of stocks and bonds purchased with such cash by deceased for plaintiff. The defendants — the executors of deceased and the widow of deceased — were charged with converting such cash and bonds. The second cause of action alleged that deceased had made a check to the order of plaintiff for $50,000 and a like charge of conversion was made against the defendants. The third cause of action alleged that plaintiff is the owner of a diamond ring which the defendants converted. The fourth cause of action alleges that plaintiff is the owner of a bracelet which the defendants converted. Damages for these respective conversions are sought in the complaint. The answers deny liability.

In respect of the first cause of action no proof of any kind was presented to support it. In respect of the second cause of action testimony was offered by the daughter of deceased concerning a transaction over a check which if credited — the court does not credit it — would permit a finding that deceased had once drawn a check in the amount stated, to the order of plaintiff. The transaction was a transaction of attempted gift if it occurred at all. A gift by check is without effect until the check is cashed (*Matter of Gibbons,* 234 App. Div. 153). This supposed check was never cashed and so this cause of action failed as matter of law.

In respect of the other two causes of action it is necessary to make more extended comment. Deceased was married and was living with his wife in their common domicile in New York. He had some sort of association with plaintiff and there

is reason to believe that he contemplated seeking a divorce from his wife in order that he might marry plaintiff. Apparently he gave plaintiff one or more articles of jewelry in periods prior to the times in issue here. The proof is that shortly before the times here important he purchased from an estate a large lot of jewelry at substantial cost to him. In this lot of jewelry were some rings and bracelets. After this purchase and in the winter just prior to his death deceased visited a resort in the south where plaintiff was residing in a small hotel. On the last of these visits plaintiff exhibited some jewelry, including a ring and a bracelet, to the other guests at the hotel and announced in the presence of deceased that they were engagement presents in anticipation of a marriage which would occur between her and deceased as soon as he got his divorce. The items of jewelry were of sufficient apparent value to cause comment among such guests. Some of these persons were called as witnesses and purported to identify two articles of jewelry produced by one or the other of the defendants as the articles which they had seen in plaintiff's possession at the resort hotel. There is a body of evidence to the contrary given by people with greater opportunity for knowledge of the particular items and so a question of fact is presented as to the identity of the articles claimed with those which the witnesses from the resort say they saw.

Before taking up that question of identity note should be made that an engagement present is an article to which is attached unique qualities. As was said by the Appellate Division in this department in *Beck* v. *Cohen* (237 App. Div. 729, 730-731): " It has been held that an engagement ring is in the nature of a pledge for the contract of marriage and that if the recipient break the contract, she should return the ring. (*Jacobs* v. *Davis*, [1917] 2 K. B. 532.) Such a ring is a symbol hallowed by social usage. That it is a conditional gift seems inherent in its very purpose. Possession should be retained during the engagement, which it symbolizes, and is changed into firm ownership upon marriage. When the engagement fails, the symbol of its existence should be returned to him who gave it. * * * The weight of authority seems to go further and hold that any gift to the lady to whom the donor is engaged to be married, made in contemplation of marriage, is conditional and upon breach of the marriage engagement by the recipient, the donor may recover the property. (28 C. J. 651.) "

Dealing with an item of this sort it is obvious that consideration must be given also in the circumstances disclosed on this record to a question of public policy. Our society is founded on the family unit. The protection and preservation of such unit is essential and is the concern of every member of the public. When there is present a question of public policy private rights take a secondary position. This plaintiff was concerned in an immoral and unlawful engagement to marry deceased at a time when he had a living wife. An engagement between parties so situated could never reach a valid contract stage while deceased continued to be married. It follows therefore that this conditional gift could never be enforced in our courts. As was said in *Flegenheimer* v. *Brogan* (284 N. Y. 268, 272): "The immediate question is whether on the presently admitted facts a recovery by the plaintiff should be denied for the sake of public interests. This is a question of public policy in the administration of the law. 'The principles of public policy remain the same, though the application of them may be applied in novel ways. The ground does not vary. As it was put by TINDAL, C. J., in *Horner* v. *Graves* (7 Bing. 735, 743), "Whatever is injurious to the interests of the public is void, on the grounds of public policy.'" (*Naylor, Benzon & Co.* v. *Krainische Industrie Gessellschaft*, [1918] 1 K. B. 331, 342, 343.) "

This plaintiff having parted with the fruits of the unlawful bargain into which she and deceased entered (if the validity of her testimony is assumed) cannot now resort to the courts to get back the property. Her claim to it must fail as matter of law.

It fails, too, for the further reason that the burden on her to establish the identity of the two articles of property produced in court as the ones in her possession in the southern resort has not been sustained. As plaintiff she had the obligation to identify the specific items. There is no question that the articles which she wore had set the hotel guests atwitter but there is no reliable proof that the particular items before the court are the ones which the guests saw. The contradictory evidence is at least sufficient to leave the court in doubt on the subject of identity and because of that doubt plaintiff must fail.

The complaint is dismissed in respect of all four causes of action. Submit, on notice, judgment accordingly.