This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Carolyn Pryer appeals from the judgment rendered by the Akron Municipal Court in favor of plaintiff Darius Grice in a contract enforcement case. This court affirms.
 I.
On May 19, 2000, Carolyn Pryer signed a contract with contractor Darius Grice to replace her driveway and to do some other repair work at her residence. Pryer paid approximately half of the contract price up front, with the balance due on completion of the job. After Grice completed the work, Pryer expressed dissatisfaction with the work and refused to pay the balance of the contract price. On August 31, 2000, Grice sued Pryer in the small claims division of Akron Municipal Court. Pryer counterclaimed, asserting that Grice breached the contract by performing in an unworkmanlike manner. Pryer sought to retrieve her earnest money and to have Grice pay for a new driveway.
The case proceeded to a bench trial. The trial court determined that Grice had met his burden of demonstrating that he and Pryer had a valid contract that Pryer breached by failing to pay Grice for his substantial compliance under the contract. The trial court determined that Grice performed almost all of his duties under the contract and that Grice was entitled to all but $250.00 of the original contract amount, less the earnest money. The court also determined that Pryer had not met her burden on the counterclaim to establish that the work was performed in an unworkmanlike manner. Therefore, the court awarded judgment to Grice on Pryer's counterclaim.
Pryer filed the instant appeal, assigning two errors.
 II. ASSIGNMENT OF ERROR I:
 "The Trial Court's judgment is against the manifest weight of the evidence in finding that there was no breach of the implied duty of workmanlike performance."
 ASSIGNMENT OF ERROR II:
 "The Trial Court erred as a matter of law in finding that the Appellant received the consideration she bargained for, that the contract was therefore not breached, and that the Appellant was not entitled to damages."
We address these two assignments of error together because the sole issue raised by each assigned error is whether Pryer received the benefit of her bargain, namely, the completion of the work done is a reasonably workmanlike manner to constitute "consideration" for the contract she signed.
Grice sued for breach of contract. "[A] breach of contract action is pleaded by stating (1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration." American Sales, Inc. v. Boffo (1991),71 Ohio App.3d 168, 175. Any contract to perform work imposes on the contractor the duty to perform the work in a workmanlike manner. SeeBarton v. Ellis (1986), 34 Ohio App.3d 251, 252-253. Failure to perform the job in a workmanlike manner constitutes a breach of contract. Id. Such a failure of adequate consideration can be pled as an affirmative defense to a complaint to enforce payment under a contract. See Gentryv. Richmond Indus. (June 26, 1998), Lake App. No. 97-L-077, unreported.
Thus, both the assigned errors challenge the trial court's determination that Grice performed the job in a sufficiently workmanlike manner as to provide adequate consideration to Pryer to obligate her payment according to the contract.
In dealing with this issue this court determines whether the trial court's decision is against the manifest weight of the evidence. When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten (1986),33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment, the court must determine that the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
The significant facts in the instant case are as follows. On May 19, 2000 Pryer contracted with Grice to remove her asphalt driveway and replace it with a concrete driveway, pour a new landing in front of her side door, and install two steel doors on the house. Before signing the contract, the parties discussed whether the landing would consist of one step or two. Grice advised Pryer that he would have to pour the driveway first, and then determine whether there was sufficient space to construct two steps. Prior to the beginning of the work, Pryer and Grice agreed that Grice would also replace the floor in the garage for an additional sum.
Sometime late in May, Grice and his workmen removed the old driveway. Due to continued rainy weather, the concrete for the new driveway could not be poured until the soil dried out. Ultimately, the forms were set up and the concrete was poured on June 1. On June 7, a one-step landing was poured over the newly-laid driveway. Pryer complained to Grice that there was only one step, rather than two. Grice told Pryer that he would replace the landing with a two-step landing. In response Pryer told Grice to get off her property, that she had hired an attorney, and she would see Grice in court. On June 12, Pryer's attorney wrote to Grice that the construction was done in an unworkmanlike manner, and told Grice to cease all work at the residence. Grice had not yet installed the custom-order steel doors.
Pryer's counterclaim stated that Grice's work was performed so poorly that the new driveway, garage floor and landing had to be removed and new concrete laid. The alleged deficiencies were: (1) construction of a one-step, unleveled landing; (2) inadequate drainage from the garage and driveway; (3) inadequate pitch in the garage floor; (4) driveway improperly pitched toward the house; (5) failure to use an expansion joint at the house; and (6) cracking of the driveway.
First, Pryer claimed that she requested a two-step landing. Grice testified that at the time the contract was signed, the parties both understood that once the driveway was laid, it would be determined whether there was sufficient space to put two steps on the landing. Pryer complained to Grice after the work was done that there was only one step. Grice agreed to tear out the landing and put in a two-step landing. Pryer ordered Grice off her property. Pryer offered no evidence to dispute Grice's testimony. In fact, the landing was not installed until June 7, and on June 12, Pryer's attorney wrote a letter to Grice advising him to stop all work on the premises. Thus, it is clear that Grice offered to remedy the problem, but Pryer refused to allow Grice to correct any problems on the step. Thus, Pryer cannot seek damages for a condition Grice offered to repair.
Pryer's second contention was that the four-foot long drain Grice installed in front of the garage door, designed to re-route water from inside the garage and from the driveway was inadequate. Pryer offered as an expert witness Mr. Albrecht, an experienced concrete contractor. Mr. Albrecht testified that a drain eight feet long and one foot wide should have been used. Grice called as an expert witness Mr. Barton, who also had many years of experience as a concrete contractor. Mr. Barton testified that a four-foot drain was adequate for a single-width driveway such as this one. Mr. Barton stated that he uses an eight-foot drain only for a double-width driveway.
This court is mindful that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Although Mr. Albrecht testified that the drain was inadequate for the water flow, Mr. Barton was equally insistent that the drain Grice installed was adequate. The existence of a difference in testimony is not adequate to establish that the judgment was against the manifest weight of the evidence.
Pryer also asserted that there was inadequate pitch to the garage floor, and that water pooled rather than ran toward the drain. However, she offered no evidence of the pooling of water. Mr. Albrecht admitted that he did not measure the pitch of the garage floor so that he could not testify about whether this met acceptable standards. Again, the evidence does not weigh heavily against the court's judgment regarding this alleged problem.
Pryer asserted that the driveway was pitched toward the house, rather than away from it. Because the driveway met the house in areas, this meant that water was running toward the house, and actually into the basement. However, Pryer offered no evidence of water in the basement or on the walls. Again, the two experts testified differently about the pitch of the driveway. Mr. Barton testified that part of the drive was definitely pitched away from the house, and that on the far side, the pitch was toward the drain, which was located midway between the edge of the drive and the house. The photographs admitted into evidence did not establish that the pitch of the driveway was toward the house. Based on the evidence on this issue, the judgment does not reflect a manifest miscarriage of justice.
Pryer claimed that Grice should have used an expansion joint where the driveway abutted the house. The experts disagreed on the advisability of using an expansion joint in this situation. In regard to most of Pryer's complaints about workmanship, Mr. Albrecht's testimony established only that he does things differently, not that the work Grice performed did not meet the standards accepted among professional contractors. Mr. Barton testified that it is customary practice not to use an expansion joint in this circumstance. Mr. Barton testified that it is acceptable practice to use expansion joints only between separate areas of concrete,e.g., where the driveway meets the city sidewalk. Again, the weight of the evidence was not clearly contrary to the determination made by the trial court.
Pryer's final issue was that the driveway was cracking. As evidence, she offered a photograph of one small area of the drive, which showed a hairline crack. Mr. Barton testified that it is virtually impossible to have a concrete job that does not develop some cracking.
This court cannot conclude that the trial court clearly lost its way when it found that Pryer and Grice had a valid contract, for which Grice had substantially performed his obligation and with which Pryer failed to comply by paying the contract price. The trial court concluded that Grice's work was performed in a sufficiently workmanlike manner to constitute adequate consideration to Pryer. This court cannot conclude that the evidence shows that the trial court's decision resulted in a manifest miscarriage of justice.
The assignments of error are not well-taken and they are overruled.
 III.
Having overruled the assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 __________________ WILLIAM R. BAIRD
CARR, J., WHITMORE, J. CONCUR.